No. 26-0303

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

In re: FIRSTENERGY CORPORATION; STEVEN E. STRAH; K. JON TAYLOR; JASON LISOWSKI; GEORGE M. SMART; PAUL T. ADDISON; MICHAEL J. ANDERSON; STEVEN J. DEMETRIOU; JULIA L. JOHNSON; DONALD T. MISHEFF; THOMAS N. MITCHELL; JAMES F. O'NEIL, III; CHRISTOPHER D. PAPPAS; SANDRA PIANALTO; LUIS A. REYES; JERRY SUE THORNTON; LESLIE M. TURNER; LEILA L. VESPOLI; JAMES F. PEARSON; DENNIS CHACK; BARCLAYS CAPITAL INC.; BOFA SECURITIES, INC.; CITIGROUP GLOBAL MARKETS, INC.; JP MORGAN SECURITIES, LLC; MORGAN STANLEY & COMPANY, LLC; MIZUHO SECURITIES USA LLC; PNC CAPITAL MARKETS LLC; RBC CAPITAL MARKETS, LLC; SANTANDER INVESTMENT SECURITIES INC.; SCOTIA CAPITAL (USA) INC.; SMBC NIKKO SECURITIES AMERICA, INC.; KEYBANC CAPITAL MARKETS INC.; TD SECURITIES (USA) LLC; U.S. BANCORP INVESTMENTS, INC.; MUFG SECURITIES AMERICAS INC.; ROBERT P. REFFNER; DONALD R. SCHNEIDER; JOHN JUDGE,

*Petitioners*

Appeal from the United States District Court for the Southern District of Ohio
Nos. 20-cv-3785, 20-cv-4287
The Honorable Algenon L. Marbley

## PLAINTIFFS-RESPONDENTS' ANSWER IN OPPOSITION TO DEFENDANT FIRSTENERGY CORP.'S AND CERTAIN OTHER DEFENDANTS' PETITION FOR PERMISSION TO APPEAL PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23(f)

ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS
MARK SOLOMON
JASON A. FORGE
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

MURRAY MURPHY MOUL
  + BASIL LLP
JOSEPH F. MURRAY (0063373)
BRIAN K. MURPHY (0070654)
1114 Dublin Road
Columbus, OH 43215
Telephone: 614/488-0400
614/488-0401 (fax)

*Attorneys for Plaintiffs-Respondents*

4917-2453-0349.v2

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 26-0303                    Case Name: In re: FirstEnergy Corporation, et al.

Name of counsel: Jason A. Forge

Lead Plaintiff Los Angeles County Employees Retirement Association and Plaintiffs Amalgamated Bank, as Trustee for the LongView LargeCap 500 Index Fund, LongView Quantitative LargeCap Fund, LongView Broad Market 3000 Index Fund, LongView LargeCap 500 Index Fund VEBA, LV LargeCap 1000 Value Index Fund, LongView Quantitative MidCap Fund, LongView Quant LargeCap Equity VEBA Fund and LongView Core Plus Fixed Income Fund, City of Irving Supplemental Benefit Plan, and Wisconsin Laborer's Pension Fund

Pursuant to 6th Cir. R. 26.1

*Name of Party*

makes the following disclosure:

1.      Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

> No.

2.      Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

> No.

---

CERTIFICATE OF SERVICE

I certify that on _____ May 22, 2026 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Jason A. Forge

---

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

6CA-1
8/08

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ...................................................................................1

II.  RELEVANT FACTUAL AND PROCEDURAL BACKGROUND..............2

    A.   FirstEnergy's confessed corruption scheme to inflate its share price. ..................................................................................................2

    B.   Procedural Background. ...............................................................4

        1.   The class certification litigation.......................................4

        2.   This Court's decision preserved the substance of Plaintiffs' allegations. ..................................................5

        3.   Post-remand proceedings. ..............................................6

            a.   Plaintiffs' expert provided a detailed description of the specific event-study methodology he would use here...............................................................6

        4.   Dalrymple clearly identified and explained the ancillary methodologies that could measure the lone source of variation from Defendants' opposition. .....................9

    C.   Post-remand Order *maintaining* class certification..............10

III. RELEVANT LEGAL STANDARD .............................................10

IV.  ARGUMENT.................................................................................11

    A.   Defendants' Petition fails on jurisdictional grounds...........12

    B.   Defendants fail the first factor, as the district court did not abuse its discretion. ..............................................................13

        1.   The Order is meticulous...............................................13

4917-2453-0349.v2

**Page**

2.      Plaintiffs' event-study methodology is universally recognized as reliable..............................................................14

3.      The Order demonstrates a clear understanding and acceptance of this Court's opinion............................................15

4.      Defendants, not the district court, misread *Comcast.* ...............16

5.      Defendants blame the district court for their own failings. ......19

6.      The district court gave Defendants exactly what they requested. ...................................................................................21

C.      Defendants failed to present any "'death-knell'" evidence. ...............23

D.      There is no novel or unsettled question here.....................................23

E.      The posture of this case weighs against granting Defendants' Petition....................................................................................................24

V.      CONCLUSION...................................................................................................25

4917-2453-0349.v2

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Affiliated Ute Citizens of Utah v. United States*,
406 U.S. 128 (1972)..................................................................................5

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013)...........................................................................*passim*

*Conwood, Co., L.P. v. U.S. Tobacco Co.*,
290 F.3d 768 (6th Cir. 2002) .............................................................14, 18

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993)................................................................................14

*Erickson's Flooring & Supply Co. v. Basic Coatings, Inc.*,
370 F. App'x 632 (6th Cir. 2010) ...........................................................20

*Falls Steel Tube & Mfg. Co. v. Trumark, Inc.*,
1995 WL 750541 (6th Cir. 1995) ...........................................................18

*FindWhat Inv. Grp. v. FindWhat.com*,
658 F.3d 1282 (11th Cir. 2011) ..............................................................14

*Forsythe v. Teva Pharm. Indus. Ltd.*,
102 F.4th 152 (3d Cir. 2024) ..................................................................14

*Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*,
594 U.S. 113 (2021)................................................................................15

*In re Delta Air Lines*,
310 F.3d 953 (6th Cir. 2002) ..................................................................23

*In re FirstEnergy Corp. Sec. Litig.*,
2022 WL 681320 (S.D. Ohio Mar. 7, 2022)..............................................2

*In re FirstEnergy Corp. Sec. Litig.*,
149 F.4th 587 (6th Cir. 2025) ..........................................................*passim*

4917-2453-0349.v2

**Page**

*In re FirstEnergy Corp. Sec. Litig.*,
2023 WL 2709373 (S.D. Ohio Mar. 30, 2023),
*vacated in part by In re FirstEnergy Corp. Sec. Litig.*,
149 F.4th 587 (6th Cir. 2025) ..................................................................2

*In re FSL Mgmt., LLC*,
2015 WL 12843232 (6th Cir. Oct. 27, 2015) ...............................1, 12

*In re Humana, Inc.*,
163 F.4th 376 (6th Cir. 2025) ...........................................11, 23, 24

*In re Scrap Metal Antitrust Litig.*,
527 F.3d 517 (6th Cir. 2008) ..................................................................18

*Thompson v. Doane Pet Care Co.*,
470 F.3d 1201 (6th Cir. 2006) ............................................................6, 7

*United States v. Householder*,
137 F.4th 454 (6th Cir. 2025), *cert. denied*,
2026 WL 1127200 (U.S. Apr. 27, 2026) ............................................2

*Waggoner v. Barclays PLC*,
875 F.3d 79 (2d Cir. 2017) ...........................................................19, 21

*Walker v. Life Ins. Co. of the Sw.*,
953 F.3d 624 (9th Cir. 2020) ..................................................................12

*Wolff v. Aetna Life Ins. Co.*,
77 F.4th 164 (3d Cir. 2023) ..................................................................12

**STATUTES, RULES, AND REGULATIONS**

Federal Rules of Civil Procedure
Rule 23(f) ................................................................1, 10, 11, 12, 23

United States Sentencing Commission Guidelines Manual (2025)
§2B1.1 ................................................................................................17
§2C1.1 ................................................................................................17

4917-2453-0349.v2

## I.    INTRODUCTION

Defendants FirstEnergy Corp. ("FirstEnergy") and certain others' (collectively, "Defendants") Rule 23(f) Petition fails for at least three reasons.

First, the Petition pertains to an order holding that "[t]he previously certified class *remains* **CERTIFIED**" (Order, R.1020, PageID#26106), which is plainly not an order "'granting or denying class-action certification.'"[1] *In re FSL Mgmt., LLC*, 2015 WL 12843232, at *1 (6th Cir. Oct. 27, 2015) (quoting Fed. R. Civ. P. 23(f)) ("[U]nder Rule 23(f), Defendants may *appeal* only orders granting or denying class certification, and they present us with none." (original emphasis)).

Second, *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) requires a methodology that can measure damages on a classwide basis according to *Plaintiffs'* theory of liability, whereas, as the district court observed, Defendants' entire argument tries to force Plaintiffs to adopt *Defendants'* theory. *Id.* at 34

And third, even *Defendants'* theory only diverges from Plaintiffs' as to possible variations in inflation, and courts unanimously hold that *Comcast* does not require Plaintiffs to account for possible variations in inflation at class certification.

---

[1]    Unless otherwise noted, all emphasis is added and citations are omitted. This Answer addresses Defendants' Petition in No. 26-0303. Additional Defendants have filed short "me-too" petitions joining No. 26-0303 (but omitting substantive argument), in Nos. 26-0304, and 26-0305.

4917-2453-0349.v2

## II.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A.   FirstEnergy's confessed corruption scheme to inflate its share price.

FirstEnergy's unprecedented, pervasive corruption has been well documented by both the district court (*see In re FirstEnergy Corp. Sec. Litig.*, 2023 WL 2709373, at *1-*6 (S.D. Ohio Mar. 30, 2023), *vacated in part by In re FirstEnergy Corp. Sec. Litig.*, 149 F.4th 587 (6th Cir. 2025); *In re FirstEnergy Corp. Sec. Litig.*, 2022 WL 681320, at *1-*5 (S.D. Ohio Mar. 7, 2022) (Marbley, J.); Order, R.1020, PageID#26070-75), and this Court in this case (*see FirstEnergy*, 149 F.4th at 597-600), and in the direct appeal of Larry Householder's criminal conviction (*see United States v. Householder*, 137 F.4th 454, 463-69 (6th Cir. 2025), *cert. denied*, 2026 WL 1127200 (U.S. Apr. 27, 2026)).  Simply put, this case represents one of the most brazen corporate securities fraud schemes in our nation's history.

FirstEnergy has confessed that its conversion to a corrupt enterprise was complete no later than March 7, 2017.  Deferred Prosecution Agreement ("DPA"), R.259-5, PageID#6015.  That is when its co-conspirator (FirstEnergy's SVP of External Affairs, defendant Michael Dowling) executed its co-conspirators' (FirstEnergy's CEO, defendant Charles Jones, and former Ohio Speaker of the House, Householder) agreement to $1 million in bribe payments.  *Id*.  FirstEnergy paid this $1 million through an initial $250,000 payment to Householder's 501(c)(4) entity

- 2 -

followed shortly by another $750,000.  *Id.*  All told, FirstEnergy has confessed to paying over $60 million in bribes to Householder and Samuel Randazzo, former Chairman of the Public Utilities Commission of Ohio.  *Id.*, PageID#6015-16.

All this corruption was aimed at maintaining and inflating FirstEnergy's share price.  FirstEnergy has confessed the corruption was aimed at its "top priority"—"the preservation of our two nuclear plants in the state and legislation for a zero emission nuclear program," and eliminating a 2024 rate distribution case negatively impacting FirstEnergy's share price.  *Id.*, PageID#6017-18.  FirstEnergy has even confessed (and documents confirm) that after Randazzo did his part by eliminating the 2024 rate case, Jones texted Randazzo to thank him for the resulting boost to FirstEnergy's share price.  *Id.*, PageID#6041.

This all accords with Plaintiffs' theory of liability: corrupt conduct Defendants committed and omitted from their public statements caused FirstEnergy's stock to trade at an inflated level.  And a series of revelations of this information caused that inflation to dissipate via several share-price drops.  *See, e.g.*, Complaint, R.72, PageID#1547-49, 1600, 1608, 1610, 1614, 1642-44/¶¶3-9, 148, 177, 187, 200, 261, 264; *id.*, PageID#1632/¶237.

4917-2453-0349.v2

## B.    Procedural Background.

### 1.    The class certification litigation.

The district court's Scheduling Order set an August 2022 deadline for Defendants to offer evidence and arguments against class certification. Scheduling Order, R.255, PageID#5902.

On June 6, 2022, Plaintiffs timely filed their motion for class certification, including reports from two different experts, one of whom was W. Scott Dalrymple. Class Certification Mot./Exs. A-G, R.293-1-293-9, PageID#6207-620. On August 1, 2022, Defendants deposed Dalrymple. Class Certification Opp./Ex. B (Dalrymple Tr.), R.339-3, PageID#7240-349. On August 17, 2022, Defendants timely opposed the motion with a 57-page brief, hundreds of pages of exhibits, and a report from their lone expert: Dr. Jennifer Marietta-Westberg. Class Certification Opp./Exs. A-I, R.339-339-10, PageID#7161-578.

Defendants' opposition did not dispute the reliability of Plaintiffs' event-study or its consistency with Plaintiffs' theory of liability. In fact, Defendants' expert, a former Securities and Exchange Commission official (Class Certification Opp., R.339, PageID#7186), testified that the SEC has used the same methodology for measuring damages and did not dispute that Plaintiffs' damages methodologies were consistent with their theory of liability. Class Certification Reply/Ex. P (Marietta-Westberg Tr.),

- 4 -

4917-2453-0349.v2

R.346-10, PageID#8208/46:23-47:1; *id.*, PageID#8224/113:11-14 ("Q. … And are you opining that [Plaintiffs' experts'] proposed damages methodologies are not consistent with [P]laintiffs' theory of liability?  A.  No.").

Defendants' opposition also did not assert that FirstEnergy's share-price inflation varied beyond *variations attributable to the passage and enactment of the HB6 legislation.*  Rather, the only criticism of Plaintiffs' damages methodology was that Plaintiffs did not explain how exactly they would account for this lone possible source of inflation variation.  Class Certification Opp./Ex. D (Marietta-Westberg Report), R.339-5, PageID#7471.

Defendants' opposition likewise did not claim that Plaintiffs were proceeding on a materialization-of-risk theory.  That claim is as wrong as it is late, raised for the first time after the Scheduling Order's deadline.  Order, R.1020, PageID#26096 (finding "this is an entirely new argument" that Defendants did not timely raise in their opposition); *see also* Reply,  R.960, PageID#24851-52.

On March 30, 2023, the district court issued its lone Class Certification Order in this case, granting certification.  Class Certification Order, R.435, PageID#9781-831.

### 2. This Court's decision preserved the substance of Plaintiffs' allegations.

This Court's review of that order created a new standard for application of the *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972) presumption,

- 5 -

4917-2453-0349.v2

which affected 1 of the Complaint's 322 paragraphs. Complaint, R.72, PageID#1640/¶256. This Court also organized Defendants' statements into 13 categories and confirmed that the alleged deceptiveness of each was the same: they misstated or omitted information about Defendants' corrupt conduct. *FirstEnergy*, 149 F.4th at 612-18.

### 3. Post-remand proceedings.

Following remand, the district court considered multiple briefs from the parties (including one in which Plaintiffs notified all that, "to simplify the jury's task, Plaintiffs will not seek damages attributable to any fractional inflation prior to the dates any [successes from FirstEnergy's corruption] were achieved") (Position Statement, R.848, PageID#20176); had oral argument (11/6/25 Hr'g. Tr., R.914, PageID#23771-820); and, at FirstEnergy's repeated request, held an all-day evidentiary hearing in which Dalrymple testified and was subjected to unlimited cross-examination and over 30 questions from the district court. 12/12/25 Hr'g Tr., R.936, PageID#24141-358.

### a. Plaintiffs' expert provided a detailed description of the specific event-study methodology he would use here.

Dalrymple "supplement[ed], elaborate[d] upon, explain[ed] and subject[ed] himself to cross-examination upon his report[s]." *Thompson v. Doane Pet Care Co.*,

470 F.3d 1201, 1203 (6th Cir. 2006).  Consistent with his prior reports[2] Dalrymple

testified unequivocally that an event study will measure damages across the class

based on Plaintiffs' theory of liability.  *See, e.g.*, 12/12/25 Hr'g Tr., R.936,

PageID#24189-92.  Put simply:

> The event study itself is a regression analysis in which we measure the correlation of, say, FirstEnergy's returns in this case as they are explained by broad market movements like the S&P 500 and the Utilities Index.  We, for lack of a better word, remove the impact of the share price return that we would expect given how the market moves.  And from that we are left with a residual return on every day that we can use to measure the impact of information on the stock price.

*Id.*, PageID#24157.  Dalrymple explained how his event study would work here:

- The event study begins by carefully selecting independent variables—here the S&P 500 Total Return Index and a comparable industry index (the S&P 500 Utilities Sector GICS Level 1 Index).  *Id.*, PageID#24159.

- The pricing data for these indices and FirstEnergy's stock is downloaded from data services such as Bloomberg or S&P Capital IQ.  *Id.*, PageID#24160.

- Certain FirstEnergy-specific adjustments are made to these pricing data, which yields a complete data set.  *Id.*, PageID#24161-62.

- The complete data set is imported into a widely used statistical program called Stata, which runs the regression, meaning it determines the statistical relationship between FirstEnergy's share price movements and the price movements of the two indices (the

---

[2]    Class Certification Reply/Ex. I (Dalrymple Rebuttal Report), R.346-3, PageID#7749-52.

- 7 -

4917-2453-0349.v2

difference in these returns is known as the *abnormal return*). *Id.*, PageID#24163-65.

- This regression analysis also allows one to calculate "confidence level[s]," or the likelihood that any given abnormal return was caused by new company-specific information versus non-company-specific information, as reflected by the indices. *Id.*, PageID#24165-67.

- Here, on days where there were revelations about FirstEnergy's corruption and a corresponding share-price drop, the event study would calculate the amount of the share price drop attributable to this company-specific information versus market or industry forces. *Id.*, PageID#24179-81, 24189-92.

There is nothing generic about this bespoke event study, which is unique to this case and FirstEnergy—its share prices, its earnings and dividend dates, its industry, and the Class Period here. All that customization enables a regression analysis to isolate the company-specific portions of FirstEnergy's post-revelations price drops. The lack of any confounding information means the entirety of these company-specific price drops was attributable to the revelations about FirstEnergy's previously concealed, corrupt conduct. 12/12/25 Hr'g Tr., R.936, PageID#24173-75. This amounts to about $20 per share of corruption-related inflation that dissipated from FirstEnergy's stock starting on July 21, 2020, which Defendants could have readily confirmed, as years earlier, Plaintiffs gave them Dalrymple's entire bespoke event study. *Id.*, PageID#24162-63, 24186-87, 24189-91, 24197.

- 8 -

### 4. Dalrymple clearly identified and explained the ancillary methodologies that could measure the lone source of variation from Defendants' opposition.

Dalrymple further explained that while the event study is the primary methodology for measuring damages attributable to Plaintiffs' theory of liability on a classwide basis, *for any potential variations or other fine tuning* for a final damages calculation, he could use fundamental valuation techniques, such as the discounted cash flow ("DCF") and market approaches, as well as scaling factors (*e.g.*, FirstEnergy's transition to a wholly regulated business). *Id.*, PageID#24216-22, 24224, 24233-34, 24351. As Defendants conceded at the evidentiary hearing, the DCF methodology is a standard valuation methodology taught in "finance school." *Id.*, PageID#24209. It uses a formula to calculate the present value of expected future income streams. *Id.*, PageID#24206-10, 24214-15. The market (or income) approach could be used to "pressure test" the DCF methodology. *Id.*, PageID#24229-33. Plaintiffs identified these additional methodologies long ago, and their reliability is universally recognized. *See* Post-Remand Brief, R.947, PageID#24494-96.

Dalrymple also explained how, *if necessary*, these additional methodologies could readily calculate the only source of variation Defendants raised in their opposition to class certification (inflation related to the passage and enactment of HB6). 12/12/25 Hr'g Tr., R.936, PageID#24232-33. FirstEnergy represented in 2020

- 9 -

that this amounted to only "a few pennies a share" (R.72, PageID#1603/¶158) and Plaintiffs have agreed to forego damages for any fractional inflation arguably attributable to any pre-enactment HB6 milestones.  Position Statement, R.848, PageID#20176.

All these methodologies would apply the same, whether this was a class action or a case brought by a single individual or entity.  12/12/25 Hr'g Tr., R.936, PageID#24168-69, 24214-15, 24233-34.

### C. Post-remand Order *maintaining* class certification.

On April 30, 2026, in a 40-page Order, the district court found that after considering this Court's "guidance, the parties' briefing and argument, and Mr. Dalrymple's testimony," "Plaintiffs' proffered expert witness's testimony is admissible, and Plaintiffs have provided a methodology for calculating damages on a classwide basis that is susceptible of measurement across the class and satisfies the predominance requirement."  Order, R.1020, PageID#26069.

## III. RELEVANT LEGAL STANDARD

Rule 23(f) is limited to allowing parties to petition for permission to appeal only orders "granting or denying class-action certification."  Fed. R. Civ. P. 23(f).

This Court has long recognized four factors that guide its consideration of a Rule 23(f) petition:

- 10 -

First, "the likelihood of the petitioner's success on the merits is a factor in any request for a Rule 23(f) appeal."  "[I]n examining a petitioner's likelihood of succeeding on the merits of an appeal, ... the standard of review is whether the district court committed an abuse of discretion."  "A district court abuses its discretion when it relies on a clearly erroneous factual determination, applies the wrong legal standard, misapplies the correct one, or makes a clear error of judgment."  Second, "[t]he 'death-knell' factor ... recogni[zes] that the costs of continuing litigation for either a plaintiff or defendant may present such a barrier that later review is hampered."  "[T]he discussion of this factor must go beyond a general assertion."  Third, "[t]he case that raises a novel or unsettled question may ... be a candidate for interlocutory review."  Fourth, "the posture of the case as it is pending before the district court is of relevance."

*In re Humana, Inc.*, 163 F.4th 376, 380 (6th Cir. 2025) (original alterations).

Each of these factors weighs against Defendants' Petition.

## IV.    ARGUMENT

After conducting the requisite rigorous damages analysis under *Comcast*, the district court explicitly *maintained* class certification here.  Because the district court's April 2026 Order did not materially change the class it had previously certified, it is not appealable under Fed. R. Civ. P. 23(f).

Beyond the Petition's jurisdictional infirmity, Defendants seek to transform *Comcast* into an implausible requirement that Plaintiffs show their methodology can calculate damages consistent with *Defendants'* theory of liability—in this case, Defendants' theory of (possibly) varying inflation levels, even if Plaintiffs dispute that theory and maintain inflation was constant (besides one milestone (HB6 enactment)

- 11 -

for which Plaintiffs have accounted).    No precedent or logic supports this interpretation of *Comcast*.

## A.    Defendants' Petition fails on jurisdictional grounds.

This Court expressly limited both its vacatur and remand of the 2023 class-certification order: "[W]e *VACATE* the class-certification order *to the extent that it applied the Affiliated Ute presumption of reliance* and *REMAND* for the district court to conduct a damages analysis under the proper standard set forth in *Comcast*." *FirstEnergy*, 149 F.4th at 623 (some original emphasis).  The district court's April 30, 2026 order properly conducted its rigorous damages analysis and "maintain[ed]" class certification.    Because this is not an order "'granting or denying class-action certification,'" it is not eligible for a Rule 23(f) petition.  *FSL*, 2015 WL 12843232, at *1 (quoting Fed. R. Civ. P. 23(f)); *see also Walker v. Life Ins. Co. of the Sw.*, 953 F.3d 624, 637 (9th Cir. 2020) ("Only where the district court certifies a class it previously declined to certify, decertifies an existing class, or changes the composition of an existing class—usually by increasing or decreasing its size—will a reconsideration order become appealable."); *Walker*, 953 F.3d at 637 (collecting cases); *Wolff v. Aetna Life Ins. Co.*, 77 F.4th 164, 172 (3d Cir. 2023) (same).  Defendants' Petition should be dismissed.

- 12 -

**B.    Defendants fail the first factor, as the district court did not abuse its discretion**.

The district court thoroughly analyzed the extensive record, questioning attorneys and Dalrymple at length, before concluding the proposed event-study methodology would enable the trier of fact "'to ascertain damages across the class' based on Plaintiffs' theory of liability—that FirstEnergy's corruption artificially inflated its stock, and that revelations of corruption-related information caused price drops—by computing abnormal returns and measuring the impact of curative events." Order, R.1020, PageID#26079-80 (citing 12/12/25 Hr'g Tr., R.936, PageID#24189-92, 24224; *see id.*, PageID#24157, 24333). That conclusion is consistent with every court to consider the use of event studies in this context.

Defendants nonetheless claim the court abused its discretion, but the charge rests on multiple misrepresentations, some of which are corrected below.

**1.    The Order is meticulous**.

The Order contains about 160 separate citations to over 300 pages of the record. Order, R.1020, PageID#26068-99. There cannot be a credible suggestion that the district court did not thoroughly review and consider the lengthy record.

- 13 -

4917-2453-0349.v2

### 2.    Plaintiffs' event-study methodology is universally recognized as reliable.

The Order cites cases, recognizing: "The 'event study to measure out-of-pocket damages' is a common methodology 'endorsed repeatedly by courts,' and is 'consistent with *Comcast*.'"  Order, R.1020, PageID#26097.  Many other courts have reached the same holding, including the Third and Eleventh Circuits, as well as every district court to consider the issue in this context (alleged fraud-induced price inflation in a concededly efficient market).  *See, e.g.*, *Forsythe v. Teva Pharm. Indus. Ltd.*, 102 F.4th 152, 158-59 (3d Cir. 2024); *FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1313 (11th Cir. 2011); *see also* Post-Remand Brief, R.947 PageID#24497 n.7 (collecting district court cases).

This Court has long recognized the reliability of regression analyses, which is what lies at the heart of the event study.  *See, e.g.*, *Conwood, Co., L.P. v. U.S. Tobacco Co.*, 290 F.3d 768, 793 (6th Cir. 2002) (recognizing that regression analysis is a well-accepted methodology for proving antitrust damages).  Like the defendants in *Conwood*, Defendants here "present[] no reasoned basis for us to find that the district court abused its discretion in determining that [Dalrymple's event-study] methodology was sufficiently reliable or relevant."  *Id*. at 792-93.  *Conwood* was in the context of a *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) challenge, but that is a distinction without difference, as there is no dispute that

- 14 -

Dalrymple's event study is consistent with Plaintiffs' classwide theory of liability. Therefore, if it is reliable (and it is), it satisfies *Comcast*.

### 3.    The Order demonstrates a clear understanding and acceptance of this Court's opinion.

The Order cites and quotes from this Court's Opinion 25 times, demonstrating adherence to this Court's holding and fidelity to its instructions.  Order, R.1020, PageID#26070-78, 26081-82, 26085-87, 26091-92, 26096-97; *id.*, PageID#226069 ("[a]ided by the Sixth Circuit's guidance"); *id.*, PageID#26077 ("the Sixth Circuit correctly pointed out the error in eliding the damages analysis between the Securities Act and Exchange Act claims"); *id.*, PageID#26087 ("This Court previously erred in conflating the Exchange Act with the Securities Act for the purposes of analyzing damages and thus failed to conduct a rigorous analysis to determine whether Plaintiffs' Exchange Act damages can be measured across the class.").

Defendants falsely assert: "[T]he district court elected to ignore on remand" this Court's observation that statements in the seventh and eighth of thirteen groupings "'are nearly identical to the misrepresentations'" in *Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*, 594 U.S. 113, 120 (2021).  Petition at 5.  In truth, the district court explicitly recognized and quoted this exact language, analyzed the issue, and explained why it does not affect class certification.  Order, R.1020, PageID#26085-86 & n.7.

- 15 -

### 4. Defendants, not the district court, misread *Comcast*.

Defendants condemn "[t]he district court's misreading of *Comcast* ...." Petition at 4. In truth, the district court repeatedly and accurately *quoted Comcast*, as well as other court's descriptions of what *Comcast* requires, including *this* Court's guidance. Order, R.1020, PageID#26077, 26081, 26085, 26088, 26093, 26097, 26099, 26103. *Comcast* is straightforward: "[A]ny model supporting a '*plaintiff's* damages case must be consistent with *its* liability case'" and must be "*capable* of measurement on a classwide basis." 569 U.S. at 34-35.

*Comcast* plainly holds it is *Plaintiffs'* theory that the damages methodology must measure. There is no dispute regarding the approximately $20 of corruption-related inflation that dissipated from FirstEnergy's stock in the second half of 2020—that is consistent with Plaintiffs' theory of liability and true across the entire class. The criminal conspiracy to which FirstEnergy confessed was complete upon agreement— allegedly February 2017 and admittedly no later than March 7, 2017— for an unprecedented amount in Ohio ($1 million), which posed the same existential risks and consequences from that point forward. Reply, R.960, PageID#24846-48. Accordingly, *Plaintiffs'* theory is that the $20 of inflation was constant throughout the conspiracy. *Defendants'* theory is that the level of inflation would have grown incrementally in proportion to the amount of actual bribe payments, so for the first

year of the conspiracy, FirstEnergy's shares would have been inflated by only one-sixtieth (1.67% or $0.33) of the eventual total inflation.

Each side will argue why they think their theory is more reasonable.  For example, Plaintiffs can use the United States Sentencing Commission Guidelines Manual (2025) ("Guidelines" or "U.S.S.G.") to demonstrate the reasonableness of their theory, as the corruption-related inflation measured by FirstEnergy's total offense level tracks far more closely to Plaintiffs' theory.  Using the bribe amounts FirstEnergy confessed to paying just Householder (Complaint, R.72, PageID#1594-95/¶137), the Guidelines' calculations under U.S.S.G. §2C1.1 (which cross-references §2B1.1) would amount to the following total offense levels each year (with the dollar amounts representing the corresponding portion of the maximum $20 inflation):

- 2017        32 ($16)

- 2018        34 ($17)

- 2019-20     40 ($20)

- 17 -

The parties' opposing views, and the U.S.S.G. figures, look like this graphically (these are rough numbers and dates):



Of course, ultimately, the jury would make its own determination.  11/6/25 Hr'g. Tr., R.914, PageID#23811; *see also Conwood*, 290 F.3d at 795 ("the jury heard all of the evidence presented to it, and apparently found other testimony supporting the award of damages more credible"); *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 534 (6th Cir. 2008) (citing *Falls Steel Tube & Mfg. Co. v. Trumark, Inc.*, 1995 WL 750541, at *3 (6th Cir. 1995) (per curiam) (for "explaining that even though defendant identified weaknesses in the evidence of damages, 'we do not find it to be so "speculative or remote" that the matter should have been taken from the jury'")).

- 18 -

4917-2453-0349.v2

Moreover, Defendants' insistence that Plaintiffs must calculate potential variations in inflation now (let alone do so when time-varying inflation is *Defendants'* theory, not *Plaintiffs'* theory) is inconsistent with *Comcast* and has been rejected by every court to consider the issue, including the Second Circuit.  In *Waggoner v. Barclays PLC*, 875 F.3d 79 (2d Cir. 2017), an opinion on which this Court relied heavily (*FirstEnergy*, 149 F.4th at 602, 607, 611, 619), the Second Circuit unequivocally rejected Defendants' misreading of *Comcast*: "*Comcast* does not suggest that damage calculations must be so precise at this juncture" as to "account for variations in inflation over time."  *Waggoner*, 875 F.3d at 106.  Every district court in every circuit, including the Sixth Circuit, to consider this issue has reached the same conclusion.  Post-Remand Brief, R.947 at PageID#24498-99 (collecting cases).

The district court's reading of *Comcast* as: (1) focused on *Plaintiffs'* theory of liability; and (2) not requiring Plaintiffs to account for possible variations in inflation is plainly not an abuse of discretion.

### 5. Defendants blame the district court for their own failings.

Defendants accuse the district court of accepting Plaintiffs' expert's "'bald statement alone'" and failing to "require[] plaintiffs to provide ""'significant" evidentiary proof,'" concluding: "Judge Marbley's approach makes *Comcast* a dead letter."  Petition at 15.  This is demonstrably false.

- 19 -

Some background: on December 1, 2025, less than two weeks before the evidentiary hearing, FirstEnergy filed a brief arguing that Plaintiffs had referred to "*some undisclosed 'event study* [that] shows ... about \$20 of inflation.'" FirstEnergy's Mot. for Order Setting 12/12/25 Hr'g Procedures, R.924-1, PageID#23492. In reality, as Plaintiffs corrected (12/12/25 Hr'g Tr., R.936, PageID#24167), *more than three years earlier*, Plaintiffs had provided Defendants with Dalrymple's *entire* event study for FirstEnergy's stock comprising thousands of pages of data sets, coding, dummy variables, and adjustments—everything Defendants needed to plug in the alleged price drops and confirm (under Plaintiffs' theory of constant inflation) a \$20 ballpark for total per-share price inflation. *Id.*, PageID#24162-63, 24186-87, 24189-91, 24197. (FirstEnergy apparently overlooked the event study—for years.).

Rather than accept responsibility for their oversight then or now, Defendants' Petition doubles down, repeatedly falsely asserting that Plaintiffs failed to provide, and the district court failed to require, an actual methodology (Petition at 1-4, 14), when (for years) they have had the actual event study Plaintiffs will use to measure damages, not just a concept in writing. What is new to parties who choose to bury their heads in the sand is not new under the law. *See, e.g., Erickson's Flooring & Supply Co. v. Basic Coatings, Inc.*, 370 F. App'x 632, 636 (6th Cir. 2010) ("in taking more than a year to go through the boxes, Erickson's Flooring did not exercise 'due

- 20 -

diligence' in obtaining the evidence it presented to the district court as 'newly discovered'").

Nonetheless, the district court went even further by, *inter alia*, also holding a full-day evidentiary hearing featuring detailed "evidentiary proof" in the form of extensive testimony concerning the *actual* event study that will measure damages in this case. Moreover, as set forth above, the district court's conclusion that *Comcast* does not require Plaintiffs to account for possible inflation variations at class certification (much less do so when that is not Plaintiffs' theory of liability) followed the "approach" the Second Circuit announced nine years ago in *Waggoner*, 875 F.3d at 106. Clearly that approach did not "make[] *Comcast* a dead letter." Petition at 15.

### 6.       The district court gave Defendants exactly what they requested.

Defendants assert: "The district court nonetheless allowed Mr. Dalrymple—but *not* Defendants' experts—to testify at a hearing to 'explain[] his proposed damages methodology.'" Petition at 10 (original alteration & emphasis). Defendants' pre-remand request for an evidentiary hearing made it into this Court's Opinion. *FirstEnergy*, 149 F.4th at 622. After remand, Defendants repeated this request multiple times. Each time, their request was solely focused on cross-examining Dalrymple:

- 21 -

- "We also think there should be an evidentiary hearing at which we have the ability to cross-examine witnesses ...." 10/6/25 Hr'g Tr., R.862 at PageID#20424.

- "And we would love the opportunity to put Mr. Dalrymple on the stand and give you the opportunity to see Mr. Dalrymple." 11/6/25 Hr'g. Tr., R.914, PageID#23797.

- "What I would love to do, Your Honor—and I think it would be educational for the Court; and the plaintiff is scared to do this—is have an evidentiary hearing and let me cross-examine him." *Id.*, PageID# at 23801.

*Not once* did Defendants request to present at the hearing any testimony from the only expert they used in opposition to Plaintiffs' motion for class certification, Dr. Marietta-Westberg. Instead, as to the actual class-certification record here, the district court gave Defendants exactly what they requested—an unlimited opportunity to cross-examine Dalrymple (after having deposed him for hours).[3]

Because Defendants' argument that the district court abused its discretion is meritless, the first factor weighs against granting their Petition.

---

[3]    Defendants did seek to introduce new expert evidence on remand (FirstEnergy's Mot. for Order Setting 12/12/25 Hr'g Procedures, R.924-1, PageID#23943) ("FirstEnergy maintains that the parties should be permitted to submit new expert evidence …."), but that was years after the August 2022 deadline for evidence and argument in opposition to class certification and years after the court warned that it would "grant *no further extensions* to the case schedule." Scheduling Order, R.255, PageID#5902. The district court rightly did not take the bait to make its order a nullity.

- 22 -

### C.    Defendants failed to present any "'death-knell'" evidence.

As this Court held just last year, grousing about "'hundreds of millions of dollars in damages'" without any evidence of "net worth or assets" fails the "'death-knell'" factor. *Humana*, 163 F.4th at 384. "The 'undue pressure' to settle should be more than the 'impact of the class certification alone.' In support, 'a defendant ... should provide the court insight into potential expenses and liabilities.'" *Id*. (original alteration); *see also In re Delta Air Lines*, 310 F.3d 953, 960 (6th Cir. 2002) ("the discussion of this [death-knell] factor must go beyond a general assertion"). Defendants do not and cannot present any death-knell evidence because FirstEnergy is a $25 billion company that can readily navigate a substantial verdict and then take a direct appeal. Accordingly, the "'death-knell'" factor plainly weighs against Defendants' Petition. *Delta*, 310 F.3d at 960.

### D.    There is no novel or unsettled question here.

In *Humana*, this Court acknowledged an unsettled question on which courts had disagreed. 163 F.4th at 384. Nevertheless, because resolution of that question would still depend on the circumstances of each case, there appeared to be no potential for a "one-size-fits-all approach," so this factor weighed against granting the Rule 23(f) petition. *Id*. Here, there are no unsettled questions on which courts have disagreed. Consistent with the district court's Order, courts have unanimously held that event

- 23 -

4917-2453-0349.v2

studies can reliably measure damages on a classwide basis where the *plaintiffs'* theory of liability is that the defendants' fraud caused share-price inflation, which dissipated upon revelations of previously concealed information. Likewise, courts have unanimously held that it is premature to require plaintiffs at the class-certification stage to account for potential variations in inflation (this is doubly true here, where the variations exist only under the *defendants'* "common sense" theory, which does not require any expert methodology). Accordingly, this factor weighs against granting Defendants' Petition.

### E. The posture of this case weighs against granting Defendants' Petition.

In *Humana*, this Court held that the defendant's unresolved motion for summary judgment weighed against granting its petition. 163 F.4th at 385. If Defendants here wish to challenge Plaintiffs' eventual actual damages calculations, they may still do so at multiple *future* stages: after Plaintiffs' experts compile and produce their final damages reports (which will be due sometime after fact discovery concludes), during expert discovery (which has yet to commence), in a motion to exclude, in a dispositive motion, at trial, and, if necessary, on direct appeal (which FirstEnergy can afford and is years away). Accordingly, this factor weighs against granting Defendants' Petition.

- 24 -

## V.    CONCLUSION

Due to space constraints, not all of Defendants' half-truths and misstatements can be addressed.  More are revealed by the full transcript of the evidentiary hearing (12/12/25 Hr'g Tr., R.936, PageID#24141-358; Defendants often parse quotes to create a misleading impression), Plaintiffs' two post-hearing briefs (Post-Remand Brief, R.947, PageID#24478-502 and Reply, R.960, PageID#24836-855), and the district court's Order (Order, R.1020, PageID#26068-107), which puts the lie to several of Defendants' attacks.  *E.g.*, *compare* Petition at 22-23 (Defendants' false materialization-of-risk argument), *with* Reply, R.960, PageID#24851-52 & Order, R.1020, PageID#26093-96; *compare* Petition at 20-21 (false criminal-enterprise and corresponding inflation arguments), *with* Reply, R.960, PageID# 24842-45.

Likewise, the two cases against the Boeing Company, on which Defendants are oddly fixated, bear no resemblance to this case—neither Boeing case indicates that the plaintiffs' had produced the actual event study they will use to measure damages; neither district court appears to have conducted a full-day evidentiary hearing for the defendants to cross-examine the plaintiffs' expert on his actual event study; and in neither case did the defendants concede that revelations confessed criminal conduct caused stock-price inflation to dissipate.  It is unlikely that Boeing and its executives would appreciate its lawyers comparing them to FirstEnergy, which has admitted that

- 25 -

4917-2453-0349.v2

it entered a criminal conspiracy with its former executives, that it bribed public officials, and that its CEO thanked one of the public officials for boosting its share price.

Defendants' Petition seeking permission to appeal should be denied.

DATED:  May 22, 2026                              Respectfully submitted,

                                                 ROBBINS GELLER RUDMAN
                                                   & DOWD LLP
                                                 DARREN J. ROBBINS
                                                 MARK SOLOMON
                                                 JASON A. FORGE

                                                       s/ Jason A. Forge
                                                 JASON A. FORGE

                                                 655 West Broadway, Suite 1900
                                                 San Diego, CA  92101
                                                 Telephone:  619/231-1058
                                                 619/231-7423 (fax)

                                                 MURRAY MURPHY MOUL
                                                   + BASIL LLP
                                                 JOSEPH F. MURRAY (0063373)
                                                 BRIAN K. MURPHY (0070654)
                                                 1114 Dublin Road
                                                 Columbus, OH  43215
                                                 Telephone:  614/488-0400
                                                 614/488-0401 (fax)

                                                 *Attorneys for Plaintiffs-Respondents*

- 26 -

4917-2453-0349.v2

## CERTIFICATE OF COMPLIANCE

The undersigned counsel certifies that the foregoing PLAINTIFFS-RESPONDENTS' ANSWER IN OPPOSITION TO PETITION FOR PERMISSION TO APPEAL PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23(f) complies with the type-volume limitation of Fed. R. App. P. 5(c) because the text of the brief comprises 5,200 words, including 39 words manually counted in the visual image, excluding the parts of the document exempted by Fed. R. App. P. 32(f), according to the word count provided by Microsoft Word 2010 word processing software. The undersigned further certifies that the foregoing document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 word processing software in Times New Roman, 14-point.

s/ Jason A. Forge
JASON A. FORGE

- 27 -

4917-2453-0349.v2

## DECLARATION OF SERVICE

I, the undersigned, declare:

1.      That declarant is and was, at all times herein mentioned, a citizen of the United States and employed in the City and County of San Diego, over the age of 18 years, and not a party to or interested party in the within action; that declarant's business address is 655 West Broadway, Suite 1900, San Diego, California 92101.

2.      I hereby certify that on May 22, 2026, I electronically filed the foregoing document: PLAINTIFFS-RESPONDENTS' ANSWER IN OPPOSITION TO DEFENDANT FIRSTENERGY CORP.'S AND CERTAIN OTHER DEFENDANTS' PETITION FOR PERMISSION TO APPEAL PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23(f) with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the appellate CM/ECF system.

3.      I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

I declare under penalty of perjury that the foregoing is true and correct. Executed on May 22, 2026, at San Diego, California.

s/ Jason A. Forge
JASON A. FORGE

- 28 -

4917-2453-0349.v2